IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFORD MCGUFFIE et al., | : | CIVIL ACTION |
| | : | NO. 09-70095 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MEAD CORP. et al., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                  AUGUST 12, 2010

Plaintiffs Alford McGuffie and Iris McGuffie (collectively "Plaintiffs") commenced this action for their exposure to asbestos or asbestos-containing products for which the various defendants are allegedly liable. Defendant MW Custom Papers, LLC ("Defendant"), the successor in interest to named defendant The Mead Corporation ("Mead") moves for summary judgment on two grounds. First, Defendant asserts that the corporate form and Alabama's shareholder immunity defense bar Plaintiffs' claims. Second, Defendant contends that Plaintiffs' claims are barred by the one-year statute of limitations that applies to all cases of asbestos exposure prior to May 1979. For the following reasons, Defendant's motion for summary judgment will be granted.

II. BACKGROUND

Plaintiffs filed this action alleging that Alford McGuffie suffers from mesothelioma, which was caused by exposure to asbestos or asbestos-containing products during his employment at the Cement Asbestos Products Company ("CAPCO") facility in Ragland, Alabama (the "Ragland Facility"). (See Def.'s Mot. Summ. J. at 2.) Alford McGuffie was employed as a machinist at CAPCO from 1968-1982. (See Pl.'s Mem. at 3.) Also, Iris McGuffie alleges a loss of consortium due to Alford McGuffie's alleged exposure. (See Def.'s Mot. Summ. J. at 2.)

Defendant is the successor in interest to Mead. (See id. at 1.) Plaintiffs' claims against Mead arise because it was a shareholder of CAPCO from 1968 until 1974.[1] (See Pl.'s Mem. at 3.) At all relevant times, CAPCO owned and operated the Ragland Facility where it manufactured products made from a combination of cement and asbestos. (See id. at 4.) Defendant argues that a mere ownership interest cannot give rise to products or premises

---

[1] On November 30, 1968, Mead acquired its ownership interest in CAPCO when it merged with Woodward Corporation, which possessed the ownership interest on the merger date. (See Pl.'s Mem. at 3.) As a result of the merger, Mead also acquired an ownership interest in National Cement. (Id.) Mead divested its ownership interests in National Cement on March 15, 1974 and CAPCO on September 30, 1974. (See Oliver Aff. at 2-3.)

Plaintiffs' counsel represents another litigant in a similar lawsuit against Mead and National Cement was the employer of said litigant. As to this action, Defendant's involvement is limited only to Mead's ownership of CAPCO.

liability claims, as it is shielded by the corporate form.  (See Def.'s Mot. Summ. J. at 3-5 (citing to Gilbert v. James Russell Motors, Inc., 812 So. 2d 1269, 1273 (Ala. Civ. App. 2001) ("corporate structure is intended to protect shareholders and officers from liability arising from the operation of the corporation")).

Defendant moved for summary judgment on two grounds. First, Defendant asserts that it is entitled to summary judgment because Plaintiffs fail to demonstrate how Mead, as a corporate shareholder of CAPCO, is liable for their injuries.  (See Def.'s Mot. Summ. J. at 3.)  Second, assuming that Mead is liable for any injuries stemming from its ownership of CAPCO, Defendant contends that any claim is barred by the applicable Alabama statute of limitations.  (Id. at 5.)

Plaintiffs contend that Mead voluntarily assumed a duty of safety at the Ragland Facility and was negligent in exercising those duties.  (See Pl.'s Mem. at 5.)  Specifically, Plaintiffs claim that Mead "voluntarily asserted control over safety and industrial hygiene programs at the [Ragland] facility" and that Mead's liability extends beyond the sale of its ownership interests.  (Id. at 7, 9.)

III. LEGAL STANDARD

    A.    APPLICABLE LAW

This matter is before the Court on the basis of diversity jurisdiction. This case was originally filed in the Alabama Circuit Court in St. Clair County, Alabama. It was removed to the Northern District of Alabama and was subsequently consolidated under MDL-875 in the Eastern District of Pennsylvania.

1.  Procedural Law

The Court, as the MDL transferee court, will apply federal procedural law as interpreted by the Third Circuit, the circuit where the transferee court sits. See Various Plaintiffs v. Various Defendants (Oil Field Cases), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) (citing In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1178 (D.C. Cir. 1987)). Therefore, the Court will apply Fed. R. Civ. P. 56(c) as interpreted by the Third Circuit.

2.  Substantive Law

In applying substantive law, the transferee court must distinguish between matters of federal and state law. Where the Court has jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332, the Court will apply state substantive law as determined by the choice of law analysis required by the state in which the action was filed, in this case Alabama. See id. at 362-63 (citing Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (evaluating applicable law after change of venue under 28 U.S.C.

§ 1404(a)); In re Dow Sarabond Prods. Liab. Litig., 666 F. Supp. 1466, 1468 (D. Colo. 1987) (evaluating applicable law after change of venue under 28 U.S.C. § 1407)).

   B.   SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Elassaad v. Independence Air, Inc., 604 F.3d 804, 808 (3d Cir. 2010). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson, 477 U.S. at 248. An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of the fact. Id. at 248-49. At the summary judgment stage, a court "resolve[s] all factual disputes and draw[s] all reasonable inferences in favor of the non-moving party." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case' when

-5-

the non[-]moving party bears the ultimate burden of proof." Id. (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n. 2 (3d Cir. 2001)). Once the movant has done so, the non-moving party "must set forth specific facts that reveal a genuine issue of material fact." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citing to Fed. R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleadings; rather its response must . . . set out specific facts showing a genuine issue for trial")). "If the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial,' summary judgment is proper as such a failure 'necessarily renders all other facts immaterial.'" Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

IV. DISCUSSION

The Court will address each of Defendant's arguments in support of its motion for summary judgment in turn.

A.  SHAREHOLDER LIABILITY

Under Alabama law, "a parent corporation, even one that owns all the stock of a subsidiary corporation[,] is not subject

to liability for the acts of its subsidiary unless the parent so controls the operation of the subsidiary as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation." In re Birmingham Asbestos Litig., 619 So. 2d 1360, 1362 (Ala. 1993) (internal citations omitted).

In its motion for summary judgment, Defendant contends that Mead was merely a shareholder of CAPCO and, thus, cannot be held liable for any of CAPCO's alleged negligence in causing Plaintiffs' injuries. Furthermore, Defendant argues that Plaintiffs fail to adduce sufficient evidence to demonstrate that Mead assumed a duty of safety at the Ragland Facility. (See Def.'s Reply at 2.) Specifically, Defendant argues that Plaintiffs' evidence is inadmissible and, even if admissible, still fails to demonstrate that Mead assumed a duty of safety.[2] (See id. at 4.)

Accordingly, the salient question before the Court is whether a genuine issue of material fact exists as to whether Mead assumed a duty of safety.

1. Assumption of Duty

Plaintiffs contend that Mead assumed responsibility for

---

[2] Defendant has filed a motion to strike the Plaintiffs' evidence from the record. (See Def.'s Mot. Strike.) However, the Court finds that even when accepting the evidence as true, Plaintiffs fail to adduce sufficient evidence to raise a genuine issue of material fact as to whether Mead assumed a duty of safety at the Ragland Facility. Therefore, Defendant's motion to strike will be denied as moot.

safety at the Ragland Facility and was negligent in performance of those duties.  (See Pl.'s Mem. at 5-6.)  The Court disagrees.

Under Alabama law, "one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith."  Gibson v. Merrifield, 984 So. 2d 430, 433-434 (Ala. Civ. App. 2007) (citing Dailey v. City of Birmingham, 378 So. 2d 728, 729 (Ala. 1979)).  However, "[t]he duty of providing a safe workplace . . . is . . . generally non-delegable."  Proctor & Gamble Co. v. Staples, 551 So. 2d 949, 952 (Ala. 1989).  Alabama courts have recognized an exception to this general rule where a plaintiff can "prove that the defendant exercised control over the manner in which the work was to be done, and prove either that the work was intrinsically dangerous or that the defendant had undertaken to provide safety on the jobsite."  Id. at 953.

To support their allegations, Plaintiffs point to various type-written correspondences between CAPCO and Mead. (See Pl.'s Mem. at 6-9; see also Pl.'s Mem. Ex. F-K.)  On their face, these documents appear insufficient to support a finding that Mead assumed a duty of safety.

First, Exhibit F appears on its face to be an advisory memorandum sent from Woodward Corporation, also a subsidiary of Mead, to a number of recipients and advises the recipients that new federal laws governing workplace safety will soon go into

effect.  (See Pl.'s Mem. Ex. F.)

Second, Exhibit G appears on its face to be two correspondences between William Bond ("Bond"), President of Woodward Corporation and Vice-President of Mead, and S.D. Weaver ("Weaver"), plant manager at the Ragland facility.  (See Pl.'s Mem. Ex. G.)  Initially, Bond asks Weaver what CAPCO's policy is regarding the x-raying of employees and what steps CAPCO has taken to eliminate dust.  (See id.)  Weaver's response outlines its x-ray policy and reports the steps taken to eliminate dust.  (See id.)

Third, Exhibit H appears on its face to be a request from Woodward Corporation for all subsidiaries to provide a periodic report of safety conditions at their facilities and CAPCO's response thereto.  (See Pl.'s Mem. Ex. H.)

Fourth, Exhibit I appears on its face to be a report by Woodward Corporation on CAPCO's safety deficiencies during an inspection conducted in 1971 and CAPCO's response thereto declaring that it had remedied such deficiencies.  (See Pl.'s Mem. Ex. I.)

Fifth, Exhibit J is a letter from CAPCO to various recipients and advises of new federal laws going into affect and asks for an outline of a plan of action.  (See Pl.'s Mem. Ex. J.)

Finally, Exhibit K is thirteen pages of various correspondences sent from CAPCO to various recipients.  (See

Pl.'s Mem. Ex. K.)

Plaintiffs allege that these documents evidence the relationship between the companies regarding safety and industrial hygiene expenditures. (See Pl.'s Mem. at 8.) However, Plaintiffs assume rather than explain why the documents actually created such a relationship. Plaintiffs also are unable to point to anything in the documents that shows Mead intended to assume a duty of safety at the Ragland Facility.

Plaintiffs' proffered evidence, even when examined in toto and in the light most favorable to the Plaintiffs and drawing all reasonable doubts in their favor, fails to raise a genuine issue of material fact as to whether Mead assumed a duty of safety at the Ragland Facility. See, e.g., Stovall v. Universal Constr. Co., 893 So. 2d 1090, 1098 (Ala. 2004) (finding "general administrative responsibility for company-wide safety" insufficient to impute liability); Proctor & Gamble Co., 551 So. 2d at 954 (finding "much more control or custody than is presented by the evidence before us . . . is necessary to sustain a finding that the defendant assumed the duty to provide a safe workplace" where defendant provided safety literature to subcontractor, sent a member of its safety division to help subcontractor set up a safety program, and even helped implement a safety tracking system).

Under the facts presented here, there is no genuine

issue of material fact that suggests piercing the corporate veil and the corporate form shields Mead from liability.

B.   ALABAMA STATUTE OF LIMITATIONS

Defendant alleges that Alabama's applicable statute of limitations bars Plaintiffs' claims.  Defendant contends that prior to May 19, 1980, Alabama's applicable statute of limitations time-barred personal injury claims for asbestos exposure one year after a plaintiff's last alleged exposure.  Because Plaintiffs have failed to adduce sufficient evidence which would raise a genuine issue of material fact as to whether Mead assumed a duty of safety, the Court need not address the parties arguments on whether Plaintiffs' claims are barred by the applicable statute of limitations.

V.  CONCLUSION

For the reasons described above, Defendant's motion for summary judgment is granted.  An appropriate order follows.